*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TM, Minor, by Next Friend LATRICE DICKENS

Plaintiff-Appellee,

v

AAA OF MICHIGAN,

Defendant-Appellant.

UNPUBLISHED
March 20, 2025
1:58 PM

No. 366360
Wayne Circuit Court
LC No. 22-004341-AV

Before: MALDONADO, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

This action, involving defendant's failure to pay no-fault insurance benefits, has now been pending for over 15 years (the complaint was filed on January 10, 2010). Payment of the subject benefits was finally made on April 22, 2020, over 10 years after judgment was entered against defendant, in the amount of $25,000, following a jury verdict. The central issue on appeal is whether defendant's 10-year failure to pay that judgment constitutes an unreasonable delay in paying benefits for purposes of imposing attorney fees under MCL 500.3148(1).

TM, by her next friend and mother, Latrice Dickens, brought this suit against defendant, AAA of Michigan, for personal protection insurance benefits (PIP) under the no-fault automobile insurance act, MCL 500.3101 *et seq*., specifically under the assigned claims plan, MCL 500.3171 to MCL 500.3176.[1] Defendant appeals by leave granted[2] the May 24, 2023 order by the Wayne

---

[1] At the time of the filing of the complaint in this matter, TM was a minor and Latrice Dickens was appointed as her Next Friend. Since that time, TM has reached the age of majority. As a result, all references to "plaintiff" in this opinion refer to TM.

[2] *TM v AAA of Mich*, unpublished order of the Court of Appeals, entered October 30, 2023 (Docket No. 366360).

-1-

County Circuit Court that affirmed the April 11, 2022 order of the 36th District Court granting attorney fees for plaintiff under MCL 500.3148.[3]

Defendant argues on appeal that it cannot be liable for plaintiff's appellate attorney fees because its initial refusal to pay attendant care benefits was not unreasonable. Alternatively, defendant argues that its exhaustion of appellate procedures did not constitute an unreasonable delay. Defendant also argues that the trial court improperly considered a settlement agreement as evidence in violation of MRE 408. We find that defendants' first argument is without merit because MCL 500.3148 authorizes the imposition of attorney fees against an insurer whose initial denial of benefits is reasonable but whose subsequent delay in paying benefits is not. We also find that the district court did not clearly err when it held that defendant's delay in payment of benefits was unreasonable. Finally, although we agree with defendant that the settlement agreement should not have been considered by the trial court, we find that the error was harmless. As a result, we affirm the judgment of the district court.

## I. BACKGROUND FACTS

### A. PROCEDURAL HISTORY BEFORE THE MOST RECENT REMAND TO DISTRICT COURT

While the facts of this case are relatively straight forward, the procedural history is extensive. Plaintiff was struck by a car on October 31, 2004, when she was ten years old. She was not covered by a no-fault automobile insurance policy, so her claim was assigned to defendant under the Michigan Assigned Claims Plan. Plaintiff submitted PIP claims for medical treatment of her injuries, which defendant paid. According to plaintiff, she sustained a traumatic brain injury arising out of the accident, which resulted in behavioral and mental disorders that necessitated attendant care services. Plaintiff submitted claims for attendant care services provided by her mother, 24 hour per day, seven days per week. Defendant alleged that plaintiff's mental condition was not caused by the automobile accident. Defendant relied on physicians that it hired to examine plaintiff and one treating psychiatrist who opined that plaintiff did not sustain a brain injury, but who thought she might be suffering from psychological issues.[4] Defendant therefore denied payment for attendant care. Subsequent proceedings were summarized by this Court in *Madison I*, as follows:

Plaintiff filed a complaint against defendant for no-fault attendant care services provided by her mother, Latrese [sic] Dickens, in the district court alleging

---

[3] This Court previously decided two appeals in this case, *Madison v AAA of Mich*, unpublished per curiam opinion of the Court of Appeals, issued March 13, 2014 (Docket No. 312880) (*Madison I*), rev'd 500 Mich 861 (2016), and *Madison v AAA of Mich*, unpublished per curiam opinion of the Court of Appeals, issued September 26, 2019 (Docket No. 342868) (*Madison II*), lv den 505 Mich 1030 (2020).

[4] To be clear, the record that defendant relied upon, from one visit with a treating psychiatrist, contains no opinion from the psychiatrist as to whether plaintiff's symptomology arose out of the subject accident; rather, he simply stated that he did not believe she suffered a traumatic brain injury and that she should undergo psychiatric and neuropsychiatric evaluations.

the statutory jurisdictional maximum of $25,000 in damages. After filing suit but prior to trial, Dickens provided affidavits to defendant indicating that she had provided attendant care from June 30, 2009 through September 2, 2010, and should be compensated at a rate of fourteen dollars per hour. At trial, plaintiff submitted proofs alleging damages in the amount of $144,480 (reflecting 24-hour care of plaintiff by Dickens for the time period specified at fourteen dollars per hour). The jury returned a non-unanimous verdict for plaintiff in the amount of $41,280. The parties stipulated to the entry of a judgment on the jury verdict in the amount of $25,000, the maximum within the district court's jurisdiction. [*Madison I*, unpub op at 1-2.]

The parties' stipulated judgment acknowledged the jury's determination that "[a]ttendant care benefits were reasonably incurred between June 30, 2009 and September 2, 2010, 12 hours per day compensable at a rate of $8 per hour." The parties also agreed that the district court had jurisdiction to enter a judgment up to $25,000, "exclusive of judgment interest, costs, and attorney fees."

Plaintiff moved for attorney fees before the judgment on the jury verdict was entered. Defendant argued in response that defendant's failure to pay benefits was reasonable because plaintiff's need for attendant care was reasonably in dispute. Defendant also argued that plaintiff's claimed hourly rates were not reasonable. The parties then entered into an agreement regarding payment of attorney fees to plaintiff, through the trial, even though defendant decided to appeal the judgment.

Notwithstanding its stipulated agreements with plaintiff, defendant moved for JNOV. This Court's opinion in *Madison I* summarizes the history related to defendant's motion for JNOV:

Defendant filed a motion for JNOV or transfer on the ground that plaintiff's proofs showed that the actual amount in controversy was greater than the $25,000 alleged in the complaint; therefore, the district court lacked subject matter jurisdiction over the case. The district court denied defendant's motion. The circuit court affirmed the district court's denial, holding that "[a]lthough it is true that jurisdiction can be challenged at any time under MCR 2.116(D)(3), it seems disingenuous to ask that the Jury Verdict be set aside at this juncture." This appeal followed. [*Id*. at 1-2.]

This Court concluded that the district court lacked subject-matter jurisdiction over the case. *Id*. at 3-4. Accordingly, the district court "had no power to enter any judgment or take any other action other than transferring or dismissing the case." *Id*. at 4. This Court therefore reversed the district court's judgment. *Id*.

Plaintiff applied to the Supreme Court for leave to appeal this Court's decision. The Supreme Court held plaintiff's application for leave in abeyance pending the decision in *Hodge v State Farm Mut Auto Ins Co* (Docket Nos. 149041 and 149046). *Madison v AAA of Mich*, 858 NW2d 463 (Mich, 2015). On June 6, 2016, the Supreme Court issued its opinion in *Hodge*, holding that "a district court determines the amount in controversy using the prayer for relief set forth in the plaintiff's pleadings, calculated exclusive of fees, costs, and interest." *Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211, 223-224; 884 NW2d 238 (2016). The Court stated:

Hodge's complaint prayed for money damages "not in excess of $25,000," the jurisdictional limit of the district court. Even though her proofs exceeded that amount, the prayer for relief controls when determining the amount in controversy and the limit of awardable damages. Because there were no allegations, and therefore no findings, of bad faith in the pleadings, the district court had subject-matter jurisdiction over the plaintiff's claim. [*Id*. at 224.]

The Court stated in a footnote:

We question, but do not decide, whether a fully-informed plaintiff acts in bad faith by filing a claim in district court, thereby limiting his own recovery to $25,000. In this case, defendant made no allegation of bad faith in the pleadings, and there has been no finding of bad faith by the district court. [*Id*. at 222 n 31.]

In sum, the Supreme Court reversed this Court's decision, reinstated the district court's judgment, and remanded to the district court for further proceedings. *Id*. at 224.

After *Hodge* was decided, in lieu of granting leave to appeal, the Supreme Court reversed this Court's judgment in *Madison I*, reinstated the November 3, 2011 judgment entered in the district court, and remanded to the district court for further proceedings. *Madison v AAA of Mich*, 500 Mich 861 (2016). During the remand proceedings in the district court, defendant moved for relief from judgment on the ground that the judgment was void, MCR 2.612(C)(1)(d). Defendant argued that plaintiff's counsels pleaded low damages in bad faith in order to invoke the district court's jurisdiction, where counsel expected to find a more sympathetic jury than in the circuit court. Defendant stated that plaintiff's trial counsel had a history of filing numerous "suspicious or extremely weak cases" in 36th District Court for this purpose. Defendant quoted from a transcript for a hearing in *Smith v State Farm Mut Auto Ins Co*, Wayne Circuit Court No. 11-002535-AV. Plaintiff's co-counsel in both the instant case and the *Smith* case, stated in a circuit court appeal in *Smith* that plaintiff's counsel knew from experience that juries in 36th District Court were more likely than juries in Wayne Circuit Court to sympathize with the plaintiff.

At the district court hearing held June 13, 2017, plaintiff's appellate counsel indicated that plaintiff's trial counsel chose the district court because he believed that a jury from a predominantly African American community would hear the client's testimony more sympathetically. He defended trial counsel's choice as being made in his client's best interests. The district court found it was "undisputed" that plaintiff's counsel "filed this case with the intention of litigating a claim in excess of the jurisdictional amount of the Court." The court found that plaintiff's counsel intended to present proof of entitlement for attendant care benefits in an amount based on 24 hours of care per day, seven days per week, at an hourly rate of $14, for a period that began on June 30, 2009, more than six months before the complaint was filed. That amount totaled $68,208, thus exceeding the district court's jurisdictional limit. The district court also cited defendant's reference to plaintiff's co-counsel's statement in *Smith v State Farm Mut Auto Ins Co*. The court found that defendant's challenge to the district court's subject-matter jurisdiction was not untimely because subject-matter jurisdiction can be raised at any stage of the proceedings. The district court referred to a footnote in the *Hodge* opinion in which the majority "question[ed], but [did] not decide, whether a fully-informed plaintiff acts in bad faith by filing a claim in district court, thereby limiting his own recovery to $25,000." The district court then

granted defendant's motion for relief from judgment, dismissed the case with prejudice, and dismissed plaintiff's motion for appellate attorney fees.

Plaintiff appealed the July 18, 2017 order to the circuit court, which reversed the order on the ground that the law-of-the-case doctrine precluded further consideration of the district court's subject-matter jurisdiction. This Court granted defendant's application for leave to appeal. *Madison v AAA of Mich*, unpublished order of the Court of Appeals, entered August 9, 2018 (Docket No. 342868). In *Madison II*, this Court distinguished plaintiff's counsel's choice to file in district court despite having proof of damages in excess of $25,000, from a case in which a plaintiff's damages are indisputably below the jurisdictional threshold, but the plaintiff inflates damages to obtain jurisdiction in a higher court. *Madison II*, unpub up at 4-5. This Court noted that plaintiff's evidence of damages in excess of $25,000 "hardly proves that the case was definitively and indisputably *worth* an amount in excess of that figure." *Id*. at 5.

Continuing its analysis, this Court concluded that the factual question of defendant's alleged bad faith "does not matter, because defendant waited far too long to make this claim." *Id*. at 5. This Court reasoned that the judgment could not be void under MCR 2.612(C)(1)(d) because plaintiff properly pleaded damages within the district court's jurisdiction. *Id*. at 6. Accordingly, the substance of defendant's motion was not that the district court lacked jurisdiction, but that it should not have retained jurisdiction. *Id*. at 6-7. Therefore, "the gravamen of defendant's motion for relief from judgment is not that the judgment is void for lack of jurisdiction, but that plaintiff's counsel misrepresented, in bad faith, the amount in controversy." *Id*. at 8. The applicable subrule was therefore MCR 2.612(C)(1)(c), which provides for relief on grounds of "[f]raud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." *Madison II*, unpub op at 8. "Under this subsection of the court rule, a motion for relief from judgment must be brought 'within one year after the judgment . . . was entered.' " *Id*. at 8, quoting MCR 2.612(C)(2). The one-year period expired in November 2012; therefore, defendant was barred from raising the issue. *Madison II*, unpub op at 8.

Our Supreme Court denied defendant's application for leave to appeal. *Madison*, 505 Mich at 1030. A concurring opinion was issued that quoted the concurring opinion in *Hodge*, which stated "that this Court currently lacks a basis to conclude that plaintiff pleaded in bad faith." *Id*. at 1030 (MARKMAN, J., concurring), quoting *Hodge*, 499 Mich at 227 n 2 (quotation marks omitted). The concurring Justice opined that the instant case "was in a similar posture as *Hodge* in the sense that the record did not sufficiently reflect that plaintiff's allegations were made in bad faith, defendant had made no allegation of bad faith in the pleadings, and there had been no finding of bad faith by the district court." *Madison*, 505 Mich at 1030. In addition, he opined that the present record did not support defendant's allegation of bad faith:

> [T]he record still does not sufficiently reflect that plaintiff's allegations were made in bad faith. Neither plaintiff nor plaintiff's trial attorney testified about why the case was filed in district court. Instead, the only additional evidence that we have is plaintiff's appellate attorney's testimony, in which he surmised that plaintiff's trial attorney probably filed in district court because he thought that he had a better chance of prevailing in the district court. However, this is mere speculation. Accordingly, I continue to believe that this Court lacks a sufficient basis to

conclude that plaintiff pleaded in bad faith. Therefore, I concur in this Court's order denying leave to appeal. [*Id*. at 1031.]

## B. PLAINTIFF'S POST-REMAND MOTIONS FOR APPELLATE ATTORNEY FEES

After remand to the district court, plaintiff's attorneys filed separate motions for attorney fees. Richard Shaw requested fees for 14.5 hours at the hourly rate of $382.50, for a total of $5,546.25. He argued that defendant's argument regarding subject-matter jurisdiction "is now known to be patently unreasonable." Michael Fortner sought attorney fees in the amount of $148,375. He stated that he was assisted by Shaw, Michael Schwartz, and Gordon Berris. Fortner attached an affidavit supporting fees earned by Berris and an invoice for Schwartz's law firm Schwartz, PLLC.

Defendant argued in response that plaintiff was not entitled to fees because there was a bona fide factual dispute regarding plaintiff's entitlement to attendant care benefits for a closed head injury. Defendant stated that the only benefits that it refused to pay were benefits relating to plaintiff's alleged behavioral disorder. Defendant argued that this denial was reasonable because substantial evidence indicated that this disorder was not causally related to a bodily injury sustained in the accident. Defendant challenged plaintiff's attorney-fee demands as unreasonable with respect to the number of hours billed and the hourly rates.

Plaintiff argued in response that defendant and Fortner "settled the issue of attorney fees related to the trial with Defendant paying Michael Fortner attorney fees." Plaintiff stated that by entering into this settlement, defendant "conceded that its decision to deny Plaintiff's claim was unreasonable and that attorney fees were warranted." Defendant could have appealed the trial court's judgment on the merits of the jury's verdict, but instead it pursued a subject-matter jurisdiction challenge. Defendant's choice to appeal instead of paying the judgment forced plaintiff to incur expenses defending the judgment. Plaintiff further argued that the appellate attorney fees she sought were reasonable.

At oral argument held February 24, 2021, plaintiff argued that the existence of a bona fide factual uncertainty at the time defendant first denied plaintiff's claim was irrelevant to the issue of plaintiff's entitlement to appellate attorney fees. Plaintiff also stated that defendant's appeals "had absolutely nothing to do with resolving a bona fide factual uncertainty." Additionally, defendant's agreement to a settlement of plaintiff's attorney-fee claim constituted a tacit acknowledgment that there was no bona fide factual uncertainty.

Defendant argued that plaintiff failed to address the merits of defendant's argument regarding a bona fide factual uncertainty, but instead erroneously argued that it was unnecessary to demonstrate that defendant unreasonably denied benefits. Defendant also stated that plaintiff's argument about the settlement was "improper and legally baseless" because MRE 408 precluded consideration of the settlement. Defendant argued that plaintiff's medical records negated her allegation of a traumatic brain injury. Defendant denied that the jury's finding made the denial unreasonable.

The trial court remarked that the jury made a finding that plaintiff sustained a closed head injury in the accident. It asked defendant if it had the evidence supporting this finding before trial.

Defense counsel replied by arguing that all of plaintiff's medical records before the lawsuit indicated that she did not have a closed head injury. The trial court asked defendant:

> So you lose the case at trial and then you appeal the case multiple times, multiple layers, go to the Supreme Court, you lost it there and it comes back. You're losing at all these appellate stages. And you're saying because initially that you received some information right after the accident and you're basing it on the information that you received first and not including the information that came afterwards, the jury verdict, all of the appellate decisions, you're saying because of what you received right after the injury, that stops you from having to pay attorney fees in perpetuity? Is that the argument?

Defense counsel replied that the statute and Supreme Court precedent hold that "[t]he original denial had to be unreasonable or there's no right to attorney fees." Plaintiff's counsel replied:

> He's right that when you have the bona fide reasonable factual dispute you're allowed to go to trial without the risk of having to pay attorney fees. But once that's concluded there's a separate denial that takes place. It's a further denial when you decide to take the appeal forward and therefore you can't relate back to what happened at the initial denial. You have to look at why was it denied now again. In this case it was denied again in 2012 when they decided to appeal and it was denied in 2016 when they decide to take a second appeal to the Supreme Court.

Plaintiff's counsel stated that defendant did not appeal the judgment on the ground that the evidence did not support the jury's verdict, but instead pursued jurisdictional arguments that were unrelated to a factual uncertainty. Plaintiff also argued that defendant tacitly accepted the jury's finding because it stipulated to a verdict within the district court's jurisdictional limit and sought relief solely on the basis of jurisdiction.

Defense counsel replied that without an unreasonable denial plaintiff could not receive attorney fees, including "appellate attorney fees caused by the unreasonable denial." The trial again remarked that defendant was basing its dispute regarding attorney fees only on information it had at the initiation of the case, and then said it would move past this argument and address the reasonableness of plaintiff's attorney fees.

Plaintiff requested time to prepare proposed findings of fact regarding the reasonableness of her attorney-fee claims. Defendant objected, arguing that the trial court had sufficient information to decide the factual issues. The trial court gave the parties the options of submitting proposed findings of fact and conclusions of law.

Plaintiff's proposed conclusions of law included the statement that defendant did not attempt to rebut the presumption of unreasonableness with any argument other than its argument that factual uncertainty made its initial denial reasonable. Plaintiff also stated that defendant waived the issue regarding factual uncertainty by paying plaintiff's counsel the attorney fees that plaintiff incurred in obtaining the jury verdict. Plaintiff asserted that defendant was liable for appellate attorney fees under the no-fault act because it unreasonably failed to pay the judgment for several years while it exhausted the appeals process.

Defendant stated in response that plaintiff failed to present authority for her argument that an appeal can constitute denial of a claim within the meaning of MCL 500.3148(1). Defendant stated that its appeals were not unreasonable because they arose from a legitimate question of statutory construction related to jurisdiction and because this Court in *Madison I* agreed with defendant's position, although the Supreme Court subsequently reversed this Court's decision.

The district court issued its oral opinion on March 16, 2021. The court awarded Shaw attorney fees based on "an upward revision to his hourly rate to the amount of $382.50," for a total amount of $13,844.55. Berris was awarded fees for 15.5 hours, with an upward departure rate of $382.50, for a total of $5,928.75. The court explained its differential rate determination for Fortner and awarded him a total of $126,299. The court determined that $580 was a fair hourly rate for Schwartz, multiplied by 82.7 hours, for a total of $47,966.

On August 26, 2021, defendant filed a complaint in circuit court for superintending control. Defendant argued that the district court's unreasonable delay in issuing a written order justified the circuit court's intervention. The district court issued a written order on September 17, 2021. The order did not state any specific findings of fact or conclusions of law, but merely stated that the motion was granted "[f]or the reasons stated on the record of February 24, 2021, and March 16, 2021." The order awarded attorney fees for Shaw in the amount of $13,844.55, for Berris in the amount of $5,928.75, for Fortner in the amount of $126,299, and for Schwartz in the amount of $47,966. Defendant then withdrew its circuit court complaint for superintending control.

Plaintiff then moved to modify the September 17, 2021 order because it did not comply with the holding in *Smith v Khouri*, 481 Mich 519; 75 NW2d 472 (2008), regarding the determination of a reasonable attorney fee. She requested that the district court modify the order by providing "a detailed analysis of how it arrived at its conclusion regarding appellate attorney fees." Plaintiff requested the court to allow her to submit a proposed written opinion and order.

Defendant concurred with plaintiff's request for the trial court to address deficiencies in its September 17, 2021 order; however, it argued that it would be inappropriate for plaintiff's attorneys to draft an opinion addressing these deficiencies because they had a pecuniary interest in the terms of the order. Plaintiff filed a reply concurring with defendant's argument "that it would be inappropriate" for plaintiff's counsel to draft the opinion. Plaintiff proposed that the trial court "schedule this matter for hearing and go through the analysis on the record."

The district court then issued an opinion and order on April 11, 2022 finding that defendant's refusal to pay benefits for longer than ten years was an unreasonable delay under the statute. The court addressed plaintiff's argument that the attorney-fee settlement equated with an admission of liability by defendant. The court took judicial notice "that there is no record nor does the register of actions reflect that this Court made any findings of payments terms made between the parties." The court indicated that it made its final finding that attorney fees were allowable without considering the settlement, but "for the purposes of making a complete record," the court "rules that the review and contemplation of the settlement of attorney fees related to this matter are admissible" under *Chouman v Homeowners Ins Co*, 293 Mich App 434, 438; 810 NW2d 88 (2011). The court explained its determination of the attorney fees for each of plaintiff's four attorneys, in the amounts referenced above.

Defendant appealed the district court's decision to the circuit court, arguing that the language of MCL 500.3148 and supporting caselaw firmly established that attorney fees are awarded to the plaintiff only when the insurer's denial of benefits was unreasonable. Defendant stated that it was undisputed that its initial denial was reasonable because several experts agreed that plaintiff's mental illness was not caused by the accident. Defendant stated that plaintiff appealed the July 18, 2017 order granting defendant's motion for relief from judgment, but she did not appeal the dismissal of her attorney-fee motion. When defendant appealed the February 26, 2018 order reversing the order granting defendant relief, plaintiff did not cross-appeal the attorney-fee issue. Defendant argued that the district court erroneously determined that the requirement of an unreasonable denial applied only to trial attorney fees, not appellate fees. Defendant also argued that its decisions to appeal were not unreasonable, emphasizing that its first appeal was successful in this Court, although it was later reversed by the Supreme Court. Defendant further stated that the district court's stay served as a judicial sanction of defendant's invocation of the appellate process. Finally, defendant asserted that the district court erred in ruling that MRE 408 did not preclude the court from considering the 2012 attorney-fee settlement as an admission of its liability for attorney fees.

Plaintiff argued in response that defendant unjustifiably tried to evade the Supreme Court's decision in *Madison*, 500 Mich 861, despite knowing that the Supreme Court already decided that there was no evidence that plaintiff chose the district court in bad faith. The Supreme Court reinstated the November 3, 2011 judgment without addressing defendant's other arguments regarding jurisdiction. Plaintiff accused defendant of misrepresenting the nature of the Supreme Court's reinstatement of the district court in order to obtain a favorable ruling on its motion for relief from judgment. The circuit court corrected the district court's error in its February 26, 2018 order. Plaintiff cited the concurring Supreme Court opinion stating that defendant failed to demonstrate that plaintiff made allegations in bad faith. Plaintiff also again argued that defendant failed to rebut the presumption that the delay in paying overdue benefits was unreasonable. Plaintiff argued that it was insufficient for defendant to argue that its pretrial refusal was not unreasonable; defendant could not avoid attorney fees because it failed to also demonstrate that its posttrial delay also was not unreasonable. Plaintiff further argued that in its February 15, 2021 answer to plaintiff's motion for attorney fees, defendant failed to dispute plaintiff's argument that its appeal constituted an unreasonable delay in paying no-fault benefits and defendant also failed to dispute plaintiff's position at the oral argument. Plaintiff contended that defendant's appeal was unreasonable because there was no reasonable dispute regarding the district court's jurisdiction. Plaintiff also asserted that defendant failed to preserve for appeal its argument that the district court's order of stay constituted approval of further delay and thus excused defendant's liability for appellate attorney fees. Finally, plaintiff argued that the district court did not consider the prior settlement in determining defendant's liability for attorney fees; therefore, any error related to MRE 408 was harmless. Instead, the district court took "judicial notice" that the register of actions did not reflect any findings of payments made between the parties.

The circuit court affirmed the district court's order granting plaintiff's motion for appellate attorney fees. The circuit court concluded that "the trial court did not abuse its discretion in finding that the payment of benefits was overdue and that Defendant/Appellant failed to rebut the

presumption that Defendant/Appellant's delay was unreasonable."[5]  The circuit court also disagreed with defendant's argument that the trial court erred in considering the parties' 2012 settlement in considering the motion for attorney fees.

This Court then granted defendant's application for leave to appeal. *TM v AAA of Mich*, unpublished order of the Court of Appeals, entered October 30, 2023 (Docket No. 366360).

## II.  ANALYSIS

### A.  STANDARD OF REVIEW

"A request for attorney fees under MCL 500.3148(1) presents a mixed question of law and fact." *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008).  The issue of what constitutes reasonableness is a question of law, while the issue of whether the denial of benefits is, in fact, reasonable under the facts of the case presents a question of fact. *Id*.  We review questions of law de novo, and a court's findings of fact for clear error. *Id*.  Thus, we review for clear error a decision to award or deny attorney fees under MCL 500.3148(1). *Roberts*, 275 Mich App at 66. A decision is clearly erroneous when, after review of the entire record, we have a definite and firm conviction that a mistake was made. *Id*.  Issues of statutory and constitutional interpretation and application are reviewed de novo. *In re TEM*, 343 Mich App 171, 179; 996 NW2d 850 (2022).

### B.  MCL 500.3148(1) AND THE AWARD OF ATTORNEY FEES WHEN THE INITIAL DETERMINATION TO DENY BENEFITS WAS NOT UNREASONABLE

MCL 500.3148(1) allows imposition of attorney fees against an insurer whose initial denial of benefits was reasonable, but whose subsequent delay was not.

Under the no-fault act, PIP benefits "are payable as loss accrues."  MCL 500.3142(1).  PIP benefits "are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained."  MCL 500.3142(2).  MCL 500.3148 provides:

> (1) Subject to subsections (4) and (5), an attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits that are overdue.  The attorney's fee is a charge against the insurer in addition to the benefits recovered, *if the **court finds** that the insurer **unreasonably refused to pay** the claim **or unreasonably delayed** in making proper payment*.  An attorney advising or representing an injured person concerning a claim for payment of personal protection insurance benefits from an insurer shall not claim, file, or serve a lien for payment of a fee or fees until both of the following apply:

> (a) A payment for the claim is authorized under this chapter.

---

[5] As defendant notes in its brief, the circuit court reviewed the district court's order for abuse of discretion, but it should have reviewed the decision under the clear error standard.  See *Roberts v Farmers Ins Exch*, 275 Mich App 58, 66; 737 NW2d 332 (2007).

-10-

(b) A payment for the claim is overdue under this chapter.  [Emphasis added.]

"Under these statutes, personal protection benefits become 'overdue' when an insurer fails to pay 'within 30 days after an insurer receives reasonable proof of the fact and of the amount loss sustained.' " *Moore v Secura Ins*, 482 Mich 507, 510-511; 759 NW2d 833 (2008), quoting MCL 500.3142(2).  "The purpose of the no-fault act's attorney-fee penalty provision is to ensure prompt payment to the insured." *Ross*, 481 Mich at 11.  "Accordingly, an insurer's refusal or delay places a burden on the insurer to justify its refusal or delay." *Id*.  "The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Id*.

Our Supreme Court stated in *Moore*, 482 Mich at 517:

MCL 500.3148(1) establishes two prerequisites for the award of attorney fees.  First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2).  Second, in postjudgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1).  Therefore, assigning the words in MCL 500.3142 and MCL 500.3148 their common and ordinary meaning, "attorney fees are payable only on overdue benefits for which the insurer has unreasonably refused to pay or unreasonably delayed in paying." *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 485; 673 NW2d 739 (2003) (emphasis omitted).

"If a claimant establishes the first prerequisite, a rebuttable presumption arises regarding the second." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012).  The determinative factor "is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Ross*, 481 Mich at 11.  "To determine whether the initial refusal to pay was unreasonable, the trial court must give effect to the unambiguous language of MCL 500.3148(1)," which "requires that the trial court engage in a fact-specific inquiry to determine whether 'the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.' " *Moore*, 482 Mich at 522, quoting MCL 500.3148(1).  The Court in *Moore* described the trial court's role as resolving "a mixed question of law and fact." *Moore*, 482 Mich at 522.  "[A]n insurer's initial refusal to pay benefits under Michigan's no-fault insurance statutes can be deemed reasonable even though it is later determined that the insurer was required to pay those benefits." *Id*. at 525.

Defendant asserts that it reasonably denied plaintiff's claim for attendant care benefits because those benefits were related to plaintiff's behavioral disorder that defendant alleged was not causally related to a bodily injury sustained in the motor vehicle accident.  In support of that assertion, defendant relied upon two experts (one hired by defendant and one who treated plaintiff) who opined that plaintiff did not suffer from a traumatic brain injury.  Defendant also relied upon a third expert (hired by defendant) who opined that plaintiff's symptoms were most consistent with major depressive disorder and that there was no objective indication that the subject accident "caused or materially contributed to the diagnosis, which appears to be more directly reflective of

pre-accident circumstances reflecting an adverse parent/child relationship." Defendant asserts that its reasonable choice to deny benefits overcomes the presumption of unreasonableness established by the jury's verdict. Defendant emphasizes that neither the district court nor any other court made the requisite finding that its initial denial of benefits was not reasonable. See *Moore*, 482 Mich at 517.

Plaintiff argues that defendant's emphasis on the reasonableness of the initial denial is misplaced because (1) defendant did not assert this argument before the remand proceedings following *Madison II*, and (2) the circumstances of the initial denial do not excuse defendant's unreasonable delay in paying the judgment. Drawing on both of these arguments, plaintiff contends that defendant abandoned efforts to challenge the underlying factual merits of plaintiff's claim after the jury found in her favor, and instead pursued fruitless appeals premised on subject-matter jurisdiction and plaintiff's allegedly deceptive strategies to invoke the district court's jurisdiction.

Defendant's argument that an initial unreasonable denial of benefits is an indispensable condition of a claim for attorney fees under MCL 500.3148(1) is directly contradicted by the plain language of the statute. MCL 500.3148(1) provides that an insurer is liable for attorney fees if the plaintiff's benefits are "overdue," and provides two ways in which benefits can be overdue: "if the court finds that the insurer unreasonably refused to pay the claim *or* unreasonably delayed in making proper payment." MCL 500.3148 (emphasis added). The statute clearly states that an unreasonable delay is an alternative prerequisite to imposition of an attorney fee. Our Supreme Court in *Moore*, 482 Mich at 517, described the two prerequisites as "the benefits must be overdue" and that "the insurer 'unreasonably refused to pay the claim *or* unreasonably delayed in making proper payment." (Emphasis added.) Defendant correctly states that there has not been a judicial finding that it unreasonably denied payment of benefits to plaintiff, i.e., that its initial decision to deny payment was unreasonable. However, that does not end the requisite analysis. If a jury makes findings of overdue benefits, a rebuttable presumption arises regarding the reasonableness of defendant's nonpayment. *Brown*, 298 Mich App at 690. "The insurer then bears the burden of justifying the refusal or delay." *Id.* at 691. Assuming, arguendo, that defendant was justified in refusing payment of plaintiff's claim, that justification ended when the jury returned a verdict in plaintiff's favor.

The only attorney fees at issue in this appeal are the attorney fees plaintiff incurred defending the $25,000 judgment from defendant's appeals. Defendant did not "deny" plaintiff's entitlement to those attendant care benefits; it refrained from (i.e., delayed) paying the judgment. Thus, the question is not whether defendant's initial denial of benefits was unreasonable, but whether its delay of payment was unreasonable.

The entry of the jury verdict established plaintiff's entitlement to the benefit, which became overdue when defendant withheld payment. However, defendant can overcome the presumption

of unreasonable delay if it demonstrates that the delay "is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Ross*, 481 Mich at 11.[6]

## C.  MCL 500.3148(1) AND THE AWARD OF ATTORNEY FEES WHEN THE DELAY IN PAYMENT OF BENEFITS WAS UNREASONABLE

On the issue of whether the delay in payment of PIP benefits by a no-fault insurance carrier was unreasonable, we look to the Michigan Supreme Court's decision in *Ross*, 481 Mich at 10-15. In *Ross*, the defendant refused to pay work loss benefits to the plaintiff, who was the sole shareholder and sole employee of a subchapter S corporation, Michigan Packing Company, Inc. The defendant argued that it was not required to pay work loss benefits to the plaintiff because the S corporation had lost more money than it paid in wages, relying upon *Adams v Auto Club Ins Ass'n*, 154 Mich App 186; 397 NW2d 262 (1986).

In *Adams*, a motor vehicle accident permanently disabled the plaintiff, who was a self-employed cosmetologist working as an independent contractor. Before the accident, he paid over 40 percent of his weekly gross revenue as chair rental and was also required to pay all of his business expenses. After the accident, when the plaintiff applied for work-loss benefits, his insurance carrier initially approved payment based on his gross receipts, but subsequently decided the plaintiff was entitled to wage loss based solely on his net receipts, i.e., the defendant argued that it should be allowed to deduct the plaintiff's business expenses in calculating his work-loss benefits. This Court decided that the term "loss of income" contemplated deducting the business expenses of the plaintiff, an independent contractor, from his gross income, in order to determine his work-loss benefits. This Court said such a result was necessary to avoid awarding the plaintiff more in benefits than he would have taken home from his job had he been able to work.

---

[6] We note that defendant's brief fails to even mention MCL 500.3105(1), which is the section of the no-fault act that describes when an insurer is liable to pay PIP benefits. "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1). As the appellate courts in Michigan have stated repeatedly, unlike in a third-party tort case, where a plaintiff must prove that the defendant's negligence was a proximate cause of their injury, a first-party PIP claimant need only demonstrate that the allowable expense at issue arises out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle. "There is no 'iron-clad rule' as to what level of involvement is sufficient under MCL 500.3105. However, while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for." *Detroit Med Ctr v Progressive Mich Ins Co*, 302 Mich App 392, 395; 838 NW2d 910 (2013) (quotations marks and citations omitted). Although defendant's brief never mentions proximate cause, it likewise never mentions § 3105(1) and does not explicitly argue that the expenses for plaintiff's attendant care services did not arise out of the operation or use of a motor vehicle as a motor vehicle. But because plaintiff does not raise that issue on appeal, we will not address it.

As noted above, in *Ross*, the plaintiff was not an independent contractor, he was the owner and sole employee of a subchapter S corporation. Prior to the accident in December of 2003, the subchapter S corporation paid the plaintiff's wages, as evidenced by W-2 forms submitted for 2001, 2002, and 2003. The Court noted that, for federal income tax purposes, the income and losses of a subchapter S corporation pass through to the shareholders as if they belonged to the members of a partnership. The Court held that "[t]he corporation's income or losses are not the shareholder's income or losses for the purposes of the no-fault act's work-loss-provision." *Ross*, 481 Mich at 9. Because the losses belonged to the corporation, and not to the plaintiff, the defendant was not allowed to consider the corporation's losses when calculating wage loss; rather, the defendant was required to consider the wages that the plaintiff earned as an individual (as evidenced by his W2 forms).

While the Court in *Ross* held that the defendant insurer was responsible for the payment of no-fault benefits, it nonetheless reversed the trial court's award of attorney fees under the no-fault act because it found that the defendant reasonably relied upon *Adams*.

> We acknowledge that this case differs from *Adams* in that the plaintiff in *Adams* was an unincorporated independent contractor, whereas Michigan Packing is incorporated. However, the inquiry is not whether defendant is responsible for the benefits, but only whether defendant's refusal to pay them was unreasonable. As defendant points out, a subchapter S corporation does not pay income taxes; the business's profits and losses pass through to the owners. Accordingly, because the profits and losses of Michigan Packing belonged to plaintiff for tax purposes, just as they belonged to the plaintiff in *Adams*, defendant's reliance on *Adams* was reasonable. *Adams* is not directly on point, and, ultimately, we do not extend its reasoning to the facts of this case. Nonetheless, we conclude that the trial court clearly erred in deciding that defendant's argument was not based on a legitimate question of statutory interpretation. [*Ross*, 481 Mich at 14 (footnote and citation omitted).]

Like the defendant in *Ross*, defendant in the instant case argues that its delay in issuing payment of the benefits at issue was due to a legitimate question of statutory construction. But unlike in *Ross*, defendant does not point to any binding precedent upon which it relied for its denial of benefits in this matter.

As noted above, when the jury returned its verdict, a rebuttable presumption arose in this matter regarding the second prerequisite under MCL 500.3148(1) and defendant bears the burden of justifying its 10-year delay in making the payment. See *Brown*, 298 Mich App at 690-691. But defendant's brief fails to even mention this presumption or explain how it has allegedly been rebutted, despite the fact that plaintiff has repeatedly argued that defendant has failed to rebut the presumption, i.e., defendant's brief simply ignores the issue.

Nonetheless, defendant alleges that it did not pay the benefits because of a legitimate issue of statutory construction related to the definition of "amount in controversy" contained in the jurisdictional statute, MCL 600.8301(1). But defendant's actions in this matter belie that argument. If the defendant's payment delay was genuinely based on a question as to whether MCL 600.8301(1) should be construed to permit jurisdiction in the district court, then defendant would

have paid the benefit as soon as the Supreme Court affirmed the district court's jurisdiction. Instead, upon remand to the district court, defendant moved for relief from judgment on a theory that it had never previously raised, that the judgment was allegedly void due to bad faith. Defendant then continued to delay making payment for *four additional years*, clearly thwarting a primary goal of the no-fault insurance system to provide automobile accident victims with *prompt* payment for economic losses. See *Shavers v Attorney General*, 402 Mich 554, 579; 267 NW2d 72 (1978).

In its brief, defendant attempts to reframe the issue before us, essentially arguing that we must decide whether the positions it took in the two appeals were reasonable, and further argues that this Court's reversal of the trial court in *Madison I*, and the district court's dismissal of the complaint upon the first remand, both demonstrate that defendant's positions in those appeals were reasonable. But the issue before this Court is much simpler than defendant suggests; the issue is whether the trial court clearly erred when it held that defendant's 10-year delay in issuing payment on plaintiff's no-fault claim was unreasonable pursuant to MCL 500.3148(1). On the record before us, where defendant cites to no precedent on which it relied for its delay in making payment of the insurance benefit (unlike the plaintiff in *Ross*), where defendant refuses to even acknowledge the presumption that was created by the jury's verdict in this matter (let alone explain how it has allegedly rebutted that presumption), and where its actions fail to establish that nonpayment was based upon a legitimate issue of statutory construction, we cannot find that the district court clearly erred when it held that defendant was responsible for attorney fees pursuant to MCL 500.3148(1).

## D. CONSIDERATION OF A SETTLEMENT IN VIOLATION OF MRE 408

Defendant's final argument on appeal is that the district court erred in allowing plaintiff to refer to the parties' settlement in support of its motion for attorney fees, in violation of MRE 408.

This Court reviews for abuse of discretion a trial court's decision to admit or exclude evidence. *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 153; 908 NW2d 319 (2017). The trial court abuses its discretion when it "selects an outcome that is outside the range of principled outcomes." *Id*. at 153-154. The trial court's interpretation and application of the rules of evidence is a question of law reviewed de novo. *Id*. at 154.

We agree that the trial court erred in concluding that the attorney-fee settlement was not excluded under MRE 408, but the error was harmless because it did not factor into the trial court's decision. At the time plaintiff's attorney-fee motion was decided in district court and reviewed by the circuit court, MRE 408 provided:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a

-15-

contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

"MRE 408 has been found to apply to settlements by parties to a suit with nonparties, at least to the extent of using the settlement as proof of liability of the settling party." *Chouman*, 293 Mich App at 438. "[B]ecause not only are voluntary and freely-negotiated compromises encouraged, settlements may be motivated by a great many possible considerations unrelated to the substantive merits of a claim." *Id*.

The trial court erred in concluding that MRE 408 did not apply to the trial attorney-fee settlement because it pertained to something other than defendant's liability. Plaintiff intended to use the evidence to demonstrate that defendant waived any right to deny its liability for attorney fees or to deny that its initial denial was reasonable. These purposes directly implicate the prohibition of using a party's agreement to settlement for proving its liability.

The district court's reliance on *Chouman*, 239 Mich App 434, was misplaced. In *Chouman*, the plaintiffs, a married couple, brought suit against their no-fault insurer for underinsured motorist (UIM) benefits "in the amount of the difference between plaintiffs' policy limits" and the policy limits of the driver who allegedly caused the accident. *Id*. at 437. The plaintiffs previously reached a settlement with the other driver, in which the other driver's insurer paid the plaintiffs the amount of the policy limits. *Id*. In the plaintiffs' suit against their own insurer for UIM benefits, the plaintiffs sought to prove that the wife sustained a serious impairment of a body function. *Id*. at 437-438. The defendant disputed the extent of her injuries. *Id*. The parties disputed whether the plaintiffs could use evidence of the defendant's payment of PIP benefits as proof of the wife's injuries. *Id*. The defendant argued that the evidence was inadmissible under MRE 408. This Court concluded:

> It was critical for plaintiffs to explain why Chouman [the wife] discontinued much of her medical treatment, in light of a possible argument that Chouman had discontinued treatment because she no longer considered it necessary. This evidence was highly and directly relevant to the underlying question of whether Chouman suffered a serious impairment of body function because of the accident. Under the circumstances it was not unduly prejudicial and not admitted for a purpose contrary to either MRE 408 or MRE 409. The trial court did not commit legal error or an abuse of discretion in admitting it. However, the identity of the payor of those benefits is not relevant to any proper purpose. Therefore, on remand plaintiffs are entitled to fully explain why Chouman discontinued medical treatments, but they may not introduce evidence that it was defendant who had previously been paying. [*Id*. at 437-438.]

This Court further concluded that evidence of the plaintiffs' settlement with the other driver's insurer and their own insurer's consent to the settlement was admissible because the defendant's consent to the settlement was not, in itself, a compromise of a dispute. *Id*. at 439.

In the instant case, plaintiff has not explained the purpose it had in admitting the evidence, other than using defendant's agreement as an admission of liability for attorney fees. However, the district court specifically indicated that it did not consider the settlement when making its

-16-

decision on plaintiff's motion for attorney fees.  As a result, while we find that the court erred by not excluding any reference to the attorney-fee settlement pursuant to MRE 408, we find that the error was harmless because the settlement was not a factor in the court's decision.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Anica Letica
/s/ Randy J. Wallace